660 A.2d 645

**Jose VELAZQUEZ, Administrator of the Estate of Iris Velazquez, Deceased, and in His Own Right, Appellant,**

v.

**Mahesh C. GUPTA, M.D., and Santosh Gupta, M.D., and Renga Rajan, M.D., and Maria De Los Santos Health Center.**

Superior Court of Pennsylvania.

Submitted May 22, 1995.

Filed June 29, 1995.

Norman Perlberger, Bala Cynwyd, for appellant.

James C. Stroud, Philadelphia, for Santosh Gupta, M.D., appellee.

John F. O'Brien, III, Plymouth Meeting, for Renga Rajan, M.D., appellee.

Before ROWLEY, President Judge, and TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Jose Velazquez takes this appeal from the Order of the Court of Common Pleas of Philadelphia County entered July 7, 1994 denying his petition without prejudice to release escrow funds set aside for his minor daughter pursuant to a Wrongful Death/Survival Action Distribution and Settlement Order. According to the record, appellant was appointed

administrator of the estate of his wife, who died intestate on September 5, 1987 at 20 years of age. As the result of her death due to complications from an allegedly illegal abortion, a medical malpractice action was instituted, which eventually resulted in a settlement in the amount of $800,000 ($200,000 to be paid by the doctor's private insurance carrier, with the balance of $600,000 to be paid by the Pennsylvania Medical Professional Liability Catastrophe Loss Fund ("CAT Fund"). This amount was to be paid to wife's intestate heirs, appellant and one minor child, Christina (eight years of age at the time of the June 30, 1994 hearing).[1] Pursuant to local rules, a minor's Compromise/Wrongful Death–Survival Action Petition was filed by appellant, who is the natural guardian of Christina, on May 6, 1993 and amended on May 26, 1993 to include a proposed CAT Fund annuity. A separate petition was filed in Orphans' Court to appoint Continental Bank as guardian for the estate of Christina to receive and manage the lump sum payment due her from the proceeds.

On August 16, 1993, the trial court, after considerable modifications to appellant's proposed settlement, issued its Order Approving Settlement and Order for Distribution, wherein $270,134.49 was allocated to appellant's attorneys and $529,865.51 was apportioned as wrongful death proceeds.[2] Specifically, appellant received $275,041.75 [3] less $40,000 to be held in escrow by the guardians of the estate of his daughter, subject to any Order of the Family Court division. Upon daughter attaining majority, the balance is to be paid to appellant. Daughter also received $249,932.75. No appeal was taken from this Order.

1. Appellant and his wife also had a minor son, who died seven months after wife's death.

2. Due to the involvement of this minor child, this Order was not made final until approval by the Administrative Judge of the Orphans' Court Division, which occurred on August 16, 1993.

3. This figure represents a lump sum payment of $279,932.75 less $4,891 for reimbursement to the Pennsylvania Welfare Department. Appellant has placed this money in a life-time annuity, which pays him $657 per month.

On May 17, 1994, appellant filed a petition to Partially Vacate the Order Approving Settlement and Turnover of Escrow Funds. An ex parte hearing was held on June 30, 1994 following which the trial court denied the petition and entered the Order which is the subject of the present appeal.

On appeal to this Court, appellant argues the trial court erred in failing to modify its August 16, 1993 Order and release from escrow $40,000 of the wrongful death proceeds that originally had been allocated to him pending any future Order emanating from the Family Court division. Appellant contends he and his minor daughter are an intact family residing in the same household with his new wife whom he married in January, 1994. There is no evidence of neglect or need, and in fact, daughter is well provided for and cared for by him. Appellant works full-time as an aide for mentally retarded adults, he supports his family, his wife cares for the house, and the daughter currently attends a local Catholic grade school. He contends, accordingly, that there is no reason the $40,000, which originally was allocated to him, should be set aside in an escrow account for potential support of his daughter.[4]

A review of the record reveals the trial court set aside $40,000 in escrow for the minor daughter based on its equitable powers, and in particular, the Commonwealth's strong interest in protecting the rights of minors. This Court's scope of review in matters of equity is narrow and limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed or whether there has been a manifest abuse of discretion. *Sentz v. Crabbs*, 428 Pa.Super. 205, 630 A.2d 894 (1993).

The trial court placed the money in escrow based upon evidence collected by the trial judge's clerk from the District Attorney's Office, the CAT Fund, appellant's attorney and the Welfare Department regarding appellant's support of his

4. We note that the Attorney General did not file a brief on behalf of the Commonwealth, nor did the trial court appoint counsel to file a brief on behalf of the minor child.

daughter. Although this Court has not been made privy to this information, the record from the June 30, 1994 hearing reveals appellant had given legal custody of Christina to his sister while he was in Puerto Rico from January, 1991 to May, 1993, and a question was raised as to whether appellant was supporting his minor child in his absence. (Slip Op., Halbert, J., 1/11/94, p. 2.) The trial court alluded to the fact that during this period the child was living with her aunt, there may have been a support Order in effect (N.T., 6/30/94, p. 10).[5] Moreover, the record reveals that since appellant arrived on the mainland in 1977, he has traveled back to Puerto Rico on the average of every 18 months for periods of approximately two weeks to vacation, visit family, etc. (N.T. at 19).

During the June 30, 1994 hearing, the trial court also took into account the recent circumstances in appellant's life, namely the purchase of a home and remarriage. However, the trial court, as parens patriae, found that these changes were too recent to adequately assess whether he will continue to support his daughter. (Slip Op. at 2.) Moreover, the trial court, during this hearing, inquired as to the reasons appellant needed this money at the present time. Appellant's only response was that he desired to purchase a second house as an investment for his daughter (N.T. at 20–21).

In light of this Court's strong public policy requiring a father to support his children, we find the trial court's actions to be supported by competent evidence and not a manifest abuse of its discretion. *Sentz, supra; Petto v. Petto,* 372 Pa.Super. 558, 539 A.2d 1337 (1988). Father was awarded $275,041.75 of which $40,000, or approximately fourteen per cent (14%) of his share or five per cent (5%) of the total award, was set aside for the well-being of his daughter. When she reaches majority, this money plus interest will be returned to father. Accordingly, we find this holding is in keeping with our prior decisions concerning the equitable powers of the court in family matters. *Petto, supra.*

Order affirmed.

5. Appellant denies that there ever was a support Order in effect.